# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | ) Criminal Action No. 07-400 |
| ERIC DEMOND HOLCOMB, | )<br>)<br>) |
| Defendant. | )<br>) |

## OPINION

Pending before the Court is Defendant Eric Demond Holcomb's Motion to Suppress Count One (Doc. 35) and Motion to Dismiss Count Two (Doc. 32) of the Indictment. For the reasons stated herein, we will deny both motions.

On November 13, 2007, a federal grand jury returned an indictment charging the defendant with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922 (g)(1), for alleged possession of firearms occurring on April 22, 2004 (Count I) and on May 25, 2004 (Count II). The defendant entered a plea of not guilty at his arraignment and soon thereafter filed four pretrial motions. The hearing on these motions was held on July 31, 2008. At the conclusion of the hearing, we orally denied the defendant's motion to sever the two counts in the indictment, and also denied defendant's motion to suppress Count Two. This Opinion addresses the remaining motions.

*A. MOTION TO SUPPRESS COUNT ONE*

**I. Facts In Evidence.**

Unless otherwise noted, the facts are not in dispute.

Around 2 a.m. on April 22, 2004, California Borough Police Officer Michael Yeager

drove down Second Street in California, Pennsylvania. He knew this was the time when bars in this college town closed for the night, and it was not unusual to see between 150 and 200 people disbursing onto the street. As he slowly drove down the street in his marked squad car, in the vicinity of Gecko's bar, between five and ten people approached his car on the passenger side and knocked on the car window. The people looked excited and eager to get his attention. Officer Yeager stopped his car and one person came around the car to the driver side and told him that a black male, wearing a green jersey with the number "88" printed on it, had just shown a handgun which was hidden under his shirt and tucked in his waistband. Officer Yeager was told that the male was among the crowd, walking further up Second Street. A witness pointed in the direction he was headed, on the left hand-side of the street. Officer Yeager then continued to drive further up Second Street, looking for an individual walking on the left-hand side of the street who met the witnesses' description. Within a minute of his conversation with the witness, Officer Yeager spotted, walking on the left-hand side of the street, a black male, wearing a green jersey with the number "88" printed on it. There is no dispute that the person was the defendant herein, Eric Holcomb.

Officer Yeager yelled to Mr. Holcomb to "stop" but Mr. Holcomb continued to walk. Officer Yeager asked the defendant to "come here" but the defendant looked over his shoulder and again continued to walk. Officer Yeager then stopped his car, got out, walked four or five steps toward the defendant, and told the defendant to "come here." The defendant stopped momentarily, and said he was "going home." Officer Yeager reached for the defendant's left shoulder to do a pat down, and a split second later, the defendant spun around and began to run away. The officer gave chase and followed the defendant to a fenced-in area. The officer was

unable follow the defendant through a narrow space between the fence and a building because he was wearing a holster and other bulky items as part of his on-duty uniform. At that point the chase ended. Officer Yeager lost sight of the defendant and returned to the area where the people had initially told him about witnessing the male's possession of the gun. Up to this point, Officer Yeager had not seen a gun on the defendant.

Officer Yeager then engaged in a brief conversation with some of the witnesses, who told him that the male's name was "Eric from Brownsville", and again, that the defendant had lifted up his shirt and displayed a handgun in his waistband. Officer Yeager returned to the route that the defendant had taken. Officer Yeager had been trained to retrace his steps to look for the weapon under these circumstances. He went to the spot where the chase had ended: the narrow hole between the fence and the building. Soon he spotted a 9 millimeter semi-automatic pistol lying on the ground next to the building.

The pistol was ultimately traced to the defendant; Count I of the Indictment herein ensued.

## II. Legal Analysis.

Defendant argues that when Officer Yeager ordered the defendant to stop and then began to grab the defendant's shoulder, he effectuated an arrest of the defendant without probable cause and thus, the evidence of the possession of the pistol should be suppressed. The Fourth Amendment prohibits "unreasonable searches and seizures...." U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002). But, under the exception to the warrant requirement established in Terry v. Ohio, 392 U.S.

3

1(1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Any evidence obtained pursuant to an investigatory stop (also known as a "Terry stop" or a "stop and frisk") that does not meet this exception must be suppressed as "fruit of the poisonous tree." See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963); United States v. Coggins, 986 F.2d 651, 653 (3d Cir.1993).

The issue before us is whether Officer Yeager had reasonable suspicion to stop and attempt to frisk Mr. Holcomb. If not, the firearm found on him must be suppressed as the fruit of an unlawful seizure. We begin by determining when the seizure of Mr. Holcomb occurred, as that is the moment "the Fourth Amendment becomes relevant." Terry, 392 U.S. at 16; see Johnson v. Campbell, 332 F.3d 199, 205 (3d Cir.2003). Only then can we evaluate the presence or absence of reasonable suspicion, as we must consider only "the facts available to the officer at the moment of the seizure." Terry, 392 U.S. at 21-22; see also Florida v. J.L., 529 U.S. 266, 271 (2000); Johnson, 332 F.3d at 205.

A seizure occurs when there is either (a) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or (b) submission to "a show of authority." California v. Hodari D., 499 U.S. 621, 626 (1991). Put another way, when a seizure is effected by even "the slightest application of physical force," it is immaterial whether the suspect yields to that force. Id. at 625-26. In contrast, if a suspect in the absence of physical force does not submit to an officer's show of authority, there is no seizure and no Fourth Amendment claim. Id. at 626-27. "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but

4

whether the officer's words and actions would have conveyed that to a reasonable person." Id. at 628.

We find that Mr. Holcomb was seized at the point when Officer Yeager had stopped his car and began to walk toward the defendant, telling him to "come here," to which the defendant responded that he was "going home." This instruction "would have conveyed [ ] to a reasonable person" that "he was being ordered to restrict his movement." Id.; Johnson, 332 F.3d at 206 ("interaction became a stop" when officer persisted in asking defendant to roll down his car window after defendant had refused officer's first request).

Having determined when the seizure of Mr. Holcomb occurred, we must next decide if it was based on reasonable, articulable suspicion that he might be unlawfully carrying a concealed firearm. Terry, 392 U.S. at 19 (determining reasonableness after establishing moment of seizure). Reasonable suspicion is an "elusive concept," but it unequivocally demands that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). An officer's objective basis for suspicion must be particularized because the "demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence." Terry, 392 U.S. at 22 n. 18. At the same time, we must allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks omitted); see also United States v. Nelson, 284 F.3d 472, 476 (3d Cir. 2002). "The ultimate question is whether a reasonable, trained officer standing in [Officer Yeager's] shoes could articulate

5

specific reasons justifying [Mr. Holcomb's] detention." Johnson, 332 F.3d at 206.

We find in light of the totality of the circumstances that Officer Yeager had a particularized and objective basis for suspecting that Mr. Holcomb had been engaged in criminal activity. Officer Yeager described the area outside Gecko's bar as known for criminal mischief. He was approached by numerous people who appeared excited and intent on getting his attention to report what they had seen. Based on their level of excitement and demeanor, Officer Yeager reasonably presumed that they had recently witnessed the showing of the concealed weapon. The description of the defendant was very specific, as was the description of his location. These descriptions were given in a face-to-face interaction, had veracity and were reliable; Officer Yeager saw the defendant, a black male, wearing the green jersey with the number "88" printed on it, exactly as specifically described, walking on the side of the street indicated by the witness, within one minute of the description. This, in turn, confirmed that the witnesses' tip was reliable and valuable. When the defendant repeatedly continued to walk down the street, after looking over his shoulder, such evasive behavior added to Officer Yeager's objectively reasonable suspicion sufficient to justify a Terry stop.

We will therefore enter an order denying the motion to suppress as to Count I of the Indictment.

### B. MOTION TO DISMISS COUNT TWO

The defendant has filed a Motion to Dismiss Count Two of the Indictment on the grounds that he was unlawfully arrested on May 25, 2004. At the hearing on pretrial motions held on July 31, 2008, we denied orally on the record defendant's Motion to Suppress Count Two on the grounds that the probation officers had probable cause to believe that he violated several

probation conditions, including where he must reside and the geographic limits of his travel. The probation officers conducted a reasonable search of Mr. Holcomb, a probationer who was subject to a search condition. The probation officer had received a reliable tip, corroborated by their own observations that day and prior to that day, that Mr. Holcomb was violating the conditions of his probation by living at 718 Orchard Street, California, Pennsylvania, in Washington County and was also clearly present in another county without first having obtained permission to travel outside Fayette County from his probation officer.

We find that there is no legal basis for granting the Motion to Dismiss Count Two, and thus, it will be denied. Even if the arrest was unlawful, dismissal of an indictment is an extreme remedy which we only grant in exceptional circumstances, none of which are present here. United States v. Hoffecker, 2008 WL 2405403, *9 (3d Cir. June 16, 2008). An indictment must allege sufficient facts to establish the legal requirements of the crimes charged. See United States v. Cefaratti, 221 F.3d 502, 507 (3d Cir. 2000). "In order to be valid, an indictment must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating." United States v. Hedaithy, 392 F.3d 580, 589 (3d Cir. 2004) (citing United States v. Zauber, 857 F.2d 137, 144 (3d Cir.1988)). Dismissal of an indictment is an "extreme remedy," reserved only for the most egregious abuses of the criminal process. United States v. Fisher, 692 F.Supp. 495, 501 (E.D.Pa.1988) (quoting United States v. Birdman, 602 F.2d 547, 559 (3d Cir.1979)). No such abuses occurred here.

### III. Conclusion.

For the foregoing reasons, and based on our findings regarding the credibility of the witnesses to this incident, we find Officer Yeager did not violate the Fourth Amendment rights of

the Defendant, and thus, defendant's Motion to Suppress Evidence (Doc. 35) is denied. The Motion to Dismiss Count II of the Indictment is likewise denied.

An appropriate Order follows.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge

August 29, 2008