**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


ERIC DEMOND HOLCOMB     )
                              )
         **V.**              )         **Cr. No.  07-400**
                              )         **(Civ. No. 12-29)**
**UNITED STATES**           )
                              )


## Opinion

Pending before the Court is Petitioner Eric Demond Holcomb's Motion to Vacate, Set Aside, or Modify Sentence under 28 U.S.C. § 2255, filed at Criminal No. 07-400, with Brief in Support.  ECF Nos. 85 & 86.  The government has filed a Response to the Motion (ECF No. 87), to which Mr. Holcomb has filed a Traverse (ECF No. 89).  In addition, Mr. Holcomb has filed Supplemental Citation of Authority (ECF No. 90), to which the government has filed a Response (ECF No. 91).  Mr. Holcomb contends in his motion, among other things, that his counsel was ineffective.   Because we find that his counsel was ineffective, we will grant the motion.

### I.  Background

The parties are familiar with the background and issues in this case.  Therefore, we will recount only the essential facts necessary for resolution of the motion.

On November 13, 2007, a grand jury indicted Mr. Holcomb with two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Mr. Holcomb retained George Bills, Esquire, as his counsel.

An arraignment hearing was held on November 15, 2007, at which Mr. Holcomb entered a plea of not guilty.  Arraign. Tr., 11/15/2007, 3.   At this hearing, counsel for the Government,

Craig Haller, explained to Mr. Holcomb the maximum sentencing exposure stated in the

Indictment Memorandum filed in this case, as follows.

> MR. HALLER: Do you understand that the maximum penalties for each count in the indictment is a term of imprisonment of up to ten years, fine of $250,000 and three years supervised release for each count?
> MR. HOLCOMB: Yes.

Id. The Indictment Memorandum filed in this case stated in relevant part as to the possible

penalties, as follows:

### III. PENALTIES

> A. As to Counts 1 and 2: Possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1) (as to each count):
>
> 1. A term of imprisonment of not more than ten (10) years. . . .

Indictment Mem. 2.

On December 19, 2007, Mr. Bills filed a motion to have the Probation Office prepare a

pre-guilt presentence investigation report in order to obtain an accurate determination of Mr.

Holcomb's prior criminal record. ECF No. 21. The preliminary presentence investigation report

concluded that Mr. Holcomb would not be subject to enhanced penalties as a Career Offender

under U.S.S.G. § 4B1.1 or as an Armed Career Criminal under 18 U.S.C. § 924(e). At this time

the Probation Office reported that the maximum statutory penalty upon conviction would be ten

years.

In May 2008, Mr. Bills filed a motion to dismiss Count 2 of the Indictment, a motion to

sever the counts, a motion to suppress Count 1, and a motion to suppress Count 2. An

evidentiary hearing on the motions was held on July 31, 2008. At the close of the hearing, we

orally denied the motion to sever and the motion to suppress directed at Count 2. We took the

remaining two motions under advisement. On August 29, 2008, we issued an Opinion in which

we denied the remaining two motions. A jury trial was set for September 8, 2008, however, we

moved the trial to November 10, 2008, to accommodate the fact that government counsel was already set to begin a trial in another courtroom. Mr. Bills then sought a continuance in order to review audio of recorded telephone calls, interview a parole officer, and interview Mr. Holcomb's ex-girlfriend. We granted his motion and the trial was continued to January 12, 2009.

On the day set for jury trial Mr. Bills informed the Court that Mr. Holcomb had decided to enter a plea of guilty, without a plea agreement, to both counts of the Indictment. Accordingly, instead of proceeding with jury selection we conducted a plea colloquy with Mr. Holcomb. Plea Tr., 1/12/2009. When discussing the possible maximum statutory penalties with Mr. Holcomb, we stated:

> Now . . . I want to talk to you about the possible penalties here, and we have two that we are concerned about. First of all, what's the statute say that makes this illegal?
> Well, the statute calls for a term of not more than ten years. But if it's been determined that you had three previous convictions for [a] violent felony, or a serious drug offense, or both, then the term of imprisonment is not less than fifteen years to a maximum of life imprisonment.

Plea Tr. 10. Regarding sentencing, we stated that:

> THE COURT: Do you understand that I won't be able to determine the Guideline sentence for your case until after a presentence report has been completed and you and government have had an opportunity to review it and challenge anything in it that you might disagree with. You understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand that the sentence might be different from anything that either your attorney or the U.S. Attorney might have predicted?
> THE DEFENDANT: Yes.
> THE COURT: You understand that after it's been determined what Guideline applies in a case, the Judge has the authority to impose a sentence that's more severe or less severe than the sentence called for by the Guidelines?
> THE DEFENDANT: Yes.

Plea Tr. 12. At the conclusion of the plea colloquy, Mr. Holcomb entered a plea of guilty to both counts. Plea Tr. 17-18.

A full Presentence Investigation Report was prepared and issued by the Probation Office. In Paragraph 22 of the Report, the Probation Officer stated that "[a]ccording to U.S.S.G. § 3D1.2(d), the offenses in Counts 1 and 2 are grouped." PSR, ¶ 22. The base offense level was determined to be 26, to which 2 levels were added because there were more than 3 firearms, and 2 levels were added because one of the firearms had been reported stolen. PSR ¶¶ 24-25. Thus, the Adjusted Offense Level (Subtotal) was 30. PSR ¶ 26. Section 2K2.1 of the Guidelines limits to 29 the maximum offense level that can be reached by applying 2K2.1's subsections, and thus the Adjusted Offense Level before adjustments were applied was 29. PSR ¶ 27.

Under Specific Offense Characteristics, 4 levels were added to the adjusted offense level of 29 pursuant to section 2K2.1(b)(6) because the probation office determined that the Mr. Holcomb used or possessed the firearm in connection with another felony offense. PSR ¶ 28. This increased the Adjusted Offense Level to 33, which was then reduced by 2 levels for acceptance of responsibility, and an additional 1 level for the timeliness of the acceptance of responsibility. PSR ¶¶ 33-36. Thus, the Total Offense Level was determined to be 30. PSR ¶ 37.

Defendant's Criminal History Category was determined to be VI. PSR ¶ 64. With an offense level of 30 and a criminal history of VI, the applicable advisory guideline range was reported to be 168 to 210 months. PSR ¶107. In addition, the Probation Officer stated in the Sentencing Options section of the Report, with reference to "Statutory Provisions," that the "maximum term of imprisonment is 10 years, pursuant to 18 U.S.C. § 922(g)(1) and § 924(a)(2)." PSR ¶ 106.

Both the government and the defense filed objections to the Presentence Report. Gov. Position With Respect to Presentence Report, ECF No. 56; Def. Position With Respect to

Sentencing Factors, ECF No. 58. The government filed its objections on February 26, 2009, and

argued that the total offense level should be 31, instead of 30. Gov. Position, ¶ 2(A). The

government objected to the 1-level decrease for the timeliness of acceptance of responsibility

because Mr. Holcomb did not inform the government of his intention to plead until the day set

for jury selection. Gov. Position, ¶ 2(A). Thus, the government argued that the total offense

level should be 31, which would increase the advisory guideline range from 168 to 210 months,

to 188 to 235 months. Gov. Position, ¶ 2(B).

The Probation Officer concurred with the government's objection agreeing that the total

offense level is 31 instead of 30 and the applicable advisory guideline range would therefore also

change to 188 to 235 months. Addendum, 3/12/2009, 1. In its concurrence the Probation Officer

also stated: "However, it is noted that there is a statutory maximum of 10 years (120 months) in

this case." Id.

The government also objected to the Probation Officer's statement of the Statutory

Provisions regarding Sentencing Options, as follows:

> The statutory maximum term of imprisonment (listed in paragraph 106) should be
> changed from 10 years to 20 years. The defendant was convicted of counts one
> and two of the indictment. A ten-year statutory maximum term of imprisonment
> applies to each of those counts.

Gov. Position, ¶ 2(C). The Probation Officer concurred with this objection, specifically noting

that in the Sentencing Options section, the penalties noted apply at each count. Addendum, 1.

The Probation Officer, however, did not explicitly state in the Addendum that the maximum

statutory sentence in this case was 20 years, and as discussed below the Probation Officer

persisted with a recommendation of imposing a "sentence at the statutory maximum (in this case

120 months)." Revised Sentencing Recommendation. 3/12/2009, 2.

Mr. Bills filed objections on behalf of Mr. Holcomb on March 5, 2009, setting forth several objections attacking the increase in Mr. Holcomb's offense level based on the number of firearms involved in the offense, the fact that one of the firearms was a stolen firearm, and that he had possessed a firearm in connection with another felony offense. Def. Position ¶¶ 1-3. We denied these objections at sentencing after evidence was introduced.

Mr. Bills also asserted in his objections that a departure from the guideline range was warranted in this case arguing that Mr. Holcomb's criminal history category of VI substantially over-represented the seriousness of his criminal history pursuant to U.S.S.G. § 4A1.3. Def. Position ¶ 2. We also denied the request for a downward departure at sentencing.

Mr. Bills also stated his understanding that although the Presentence Report stated that the advisory guideline range was 168 to 210 months' imprisonment, "the guideline range cannot exceed the maximum sentence permitted by statute." Id. at ¶ 4. Mr. Bills concluded that "[t]herefore, the advisory guideline range is 120 months." Id. The Probation Officer responded to Mr. Bills' objection with the following statement:

> Based on the Government's objection above, the total offense level is 31 and the criminal history category is VI, which results in a guideline range of 188 to 235 months. As noted, by [defense] counsel, [the] statute sets the maximum term of imprisonment at not more than 10 years at Counts 1 and 2, and consequently, pursuant to U.S.S.G. § 5G1.1(a), the advisory guideline range must be 120 months.

Addendum, 3.

Although the government filed its position a week before Mr. Holcomb's position, Mr. Bills did not address the government's objections, nor did he file a response to the government's objections. The government did file a Response to Mr. Holcomb's objections. Relevant to the instant Petition, the government stated as follows:

Holcomb was convicted of both counts in the indictment. Each of those counts has a statutory maximum sentence of 120 months. Therefore, Holcomb's statutory maximum sentence is 240 months. Holcomb's guideline range of 188-235 months does not exceed the applicable statutory maximum sentence.

Gov. Resp. 10.

We did not file Tentative Findings and Ruling prior to the sentencing hearing in this case. At the sentencing hearing on April 2, 2009, evidence and testimony was entered, argument was heard, and we ruled on the objections of the parties and on Mr. Bills' motion for a downward departure. We then sentenced Mr. Holcomb to 120 months' imprisonment at each count, with 68 months of the sentence imposed at Count 2 to be served consecutive to the 120-month sentence imposed at Count 1, for a total term of imprisonment of 188 months.

Four days after sentence, Mr. Bills filed a motion to withdraw citing an "irretrievably fractured" relationship. Mot. To Withdraw as Counsel, 4/6/2009, ¶ 6 (ECF No. 64). Mr. Bills explained that in response to his client asking him about filing an appeal to the Third Circuit Court of Appeals, he told his client that "in light of the Sentence being within the Federal Sentencing Guidelines, the analysis of this Court to the Objections to the Pre-Sentence Report and the specific and articulable findings by this Court[,] that there are no grounds to legitimately appeal from." Mot. To Withdraw as Counsel, 4/6/2009, ¶¶ 6 & 2. ECF No. 64. We denied the motion and Ordered Mr. Bills to first file a notice of appeal on behalf of his client before moving to withdraw from the case. ECF No. 65.

We premised our denial on counsel's representation that his client had inquired about an appeal, and Mr. Bills apparently had refused to file an appeal on behalf of his client. We explained to Mr. Bills that by disregarding his client's instructions to file an appeal he was rendering ineffective assistance of counsel. We quoted from the Supreme Court of the United States, which stated: "If counsel has consulted with the defendant [about his right to appeal], the

question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).

Thereafter a timely appeal was filed, and we permitted Mr. Bills to withdraw from the case. The United States Court of Appeals for the Third Circuit affirmed Defendant's sentence. United States v. Holcomb, 390 Fed.Appx. 117 (3d Cir. 2010). While Mr. Holcomb argued three main issues on appeal, only one issue is relevant to the instant Petition. Mr. Holcomb argued that he did not knowingly, intelligently and voluntarily enter his guilty plea because this Court failed to inform him of his maximum sentencing exposure during the plea colloquy in violation of Rule 11(b)(1)(H). Id. at 118. The Appeals Court acknowledged that we did in fact fail to inform Mr. Holcomb during his change of plea hearing that he faced a minimum ten-year sentence at each of two counts. Id. at 119. Nonetheless, the Court found that the "record contain[ed] overwhelming evidence establishing that the Court's omission at the Change of Plea Hearing did not prejudice Holcomb's substantial rights." Id. at 120.

The Court explained that to "demonstrate prejudice to his substantial rights, Holcomb must show a reasonable probability that the Rule 11 violation was the but-for cause of his decision to plea." Id. The Court concluded that Mr. Holcomb cannot establish this showing "if he was aware of the omitted information through other means." Id. The Court in fact found that "Holcomb knew of his maximum sentencing exposure" through the Indictment Memorandum and the arraignment hearing; both of which "informed Holcomb that he was indicted for two counts, and faced a maximum penalty of 10 years for each count." Id. (emphasis in original). The Court acknowledged that the Presentence Report erroneously indicated that the maximum sentence was 120 months, but that "following the Government's objection to the mistakes, the

8

probation officer corrected the errors before sentencing." Id. Thus, the Court concluded "that Holcomb did not show prejudice to his substantial rights and therefore cannot establish reversible plain error in violation of Rule 11." Id. at 120-21.

After the Third Circuit's denial of his appeal, Mr. Holcomb sought a writ of *certiorari* from the Supreme Court of the United States, which the Court ultimately denied. Thereafter, Mr. Holcomb, represented by counsel, filed this timely section 2255 petition.

## II. Standard of Review

Under section 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The statute provides, as a remedy for a sentence imposed in violation of the law, that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

Mr. Holcomb's primary ground for relief is his assertion that his counsel was ineffective. "A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 166 (3d Cir. 1993), citing Strickland v. Washington, 466 U.S. 668, 687-688 (1984).

### III. Discussion

Mr. Holcomb's primary argument is that he was denied effective assistance of counsel under the Sixth Amendment of the Constitution. He also presents several other arguments; however, the main thrust of his petition is that his counsel's ineffectiveness, along with a combination of other errors, is sufficient to warrant relief in this case. As set forth below, we thoroughly address Mr. Holcomb's claim of ineffective assistance of counsel and conclude that relief is warranted in this case. Therefore, we need not address each individual alleged error put forth by Mr. Holcomb.

### A. Procedural Bar to the Ineffective Assistance Claim

In response to the Petition, the Government argues that the "claims are barred from further consideration because they are not cognizable in a collateral proceeding, were previously litigated, and/or were procedurally defaulted." Gov. Resp. 2. Since the Third Circuit Court "already addressed the issue that underlies all of [Petitioner's] current claims," specifically that Petitioner "was not aware of the possibility of consecutive sentencing," on direct appeal, the government argues that Mr. Holcomb's claims of ineffective assistance of counsel and judicial error are barred from being relitigated in this § 2255 motion. The government specifically argues that claims of ineffective counsel "are dependent upon the merit *vel non* of the same underlying factual contention – that [Petitioner] was not aware that he could receive consecutive sentences at the time he pled guilty." Gov. Resp. 12-13. Thus, the government argues that since this factual contention was the "underlying basis [that] was argued and addressed on direct appeal," Mr. Holcomb's ineffective counsel claims should be dismissed without reaching the merits of the claims. Id. at 13.

In response, Mr. Holcomb argues that such claims are not barred, and that "while certain issues concerning the intelligent and knowing nature of petitioner's plea were raised on direct appeal, those issues were not raised in the context of ineffective assistance." Traverse 4. We agree.

In <u>Massaro v. United States</u>, the Supreme Court of the United States held "that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003). The Supreme Court reasoned that if an ineffective counsel claim is brought on direct appeal, the record is not fully "developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." <u>Id.</u> at 504-05. While the general rule is that "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," <u>id.</u> at 504, subjecting ineffective counsel claims to this rule would allow for inefficiencies and "even meritorious claims would fail when brought on direct appeal if the trial record were inadequate to support them," <u>id.</u> at 506-07. The Supreme Court thus held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." <u>Id.</u> at 509.

Based on the above case law we agree that Mr. Holcomb was not required to bring his allegation of ineffective counsel on direct appeal, and that it is proper to bring this claim under a section 2255 motion. <u>See</u> <u>United States v. Thornton</u>, 327 F.3d 268, 271-72 (3d Cir. 2003); <u>see also</u> <u>United States v. Davies</u>, 394 F.3d 182, 188 & n.5 (3d Cir. 2005) (accord & citing cases). We therefore find that Mr. Holcomb's ineffective counsel claim is not procedurally barred and we will proceed to the merits of this claim.

Moreover, we accept that Mr. Holcomb cannot show that he did not receive notice of the maximum possible sentence, but as discussed below, our conclusion that counsel's ineffectiveness prejudiced Mr. Holcomb is not dependent on the claim that Mr. Holcomb was unaware that he could receive consecutive sentences. Mr. Holcomb was on notice, in the technical sense, that each count he was charged with carried a 10-year sentence, and the government is correct that Mr. Holcomb cannot establish prejudice in this regard. However, as our analysis shows, the facts of this case demonstrate that Mr. Holcomb suffered substantial prejudice as a result of his counsel's deficient performance that affected the ultimate sentence he received. See United States v. Smack, 347 F.3d 533, 540 (3rd Cir. 2003), citing Glover v. United States, 531 U.S. 198 (2001) (holding that any reduction in sentence constitutes substantial prejudice for purposes of Strickland analysis).

### B. Ineffective Assistance of Counsel

As noted, a "petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused the petitioner prejudice." Ross v. Dist. Att'y of the Cnty. of Allegh., 672 F.3d 198, 210 (3d Cir. 2012), citing Strickland, 466 U.S. at 687.

"To show deficient performance, 'a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Ross, 672 F.3d at 210 (quoting Harrington v. Richter, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011)). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Hinton v. Alabama, ⸺ U.S. ⸺, ⸺, --- S.Ct. ⸺, –

——, 2014 WL 684015, *6 (Feb. 24, 2014) (quoting <u>Strickland</u>, 466 U.S. at 690). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected . . . if they are based on professional judgment." <u>Strickland</u>, 466 U.S. at 681. "The Supreme Court directs that our 'scrutiny of counsel's performance must be highly deferential' to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of tactical hindsight, might prove not to have best served his client's interests." <u>United States v. Loughery</u>, 908 F.2d 1014, 1018 (D.C.Cir.1990), quoting <u>Strickland</u>, 466 U.S. at 689.

With respect to prejudice, a petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Hinton</u>, 2014 WL 684015, *8 (quoting <u>Strickland</u>, 466 U.S. at 694); <u>see</u> <u>also</u> <u>Ross</u>, 672 F.3d at 210 (quoting <u>Richter</u>, 131 S.Ct. at 787). We will first address counsel's performance, and then discuss whether the deficient performance prejudiced Mr. Holcomb.

### 1. Defense Counsels' Performance

To satisfy the first prong of <u>Strickland</u>, "the defendant must show that counsel's representation fell below an objective standard of reasonableness," which means "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. We are satisfied that Mr. Holcomb's counsel fell below this standard. Focusing on the time frame from March 5, 2009, when counsel filed objections to the Presentence Report on behalf of his client, to counsel's performance at the April 2, 2009 sentencing hearing, we find that Mr. Bill's conduct was deficient.

### a. Defense Counsels' Conduct Prior to Sentencing

It is clear that Mr. Bills *never* informed his client that he was subject to a maximum sentence of 240 months. We know this first because Mr. Bills did not believe his client was subject to more than a 120-month sentence as late as March 5, 2009, when he filed his Position with Respect to Sentencing Factors. In that pleading, Mr. Bills stated that "the guideline range cannot exceed the maximum sentence permitted by statute. Therefore, the advisory guideline range is 120 months." Def. Position ¶ 4.

In addition, Mr. Bills did not challenge, and indeed never responded to, the government's position that the actual maximum sentence was twice as much as Mr. Bills believed it was. The government however did respond to Mr. Bills' position on the maximum sentence, reiterating its position that each of the counts Mr. Holcomb was convicted of has a statutory maximum sentence of 120 months, and therefore, the maximum sentence is 240 months. Gov. Resp. 10.

Finally, Mr. Bills never challenged the government's position on the maximum sentence during the sentencing hearing, and never acknowledged that there was confusion regarding the maximum sentence as reflected in the Addendum to the Presentence Report. Indeed, he never mentioned the issue at all during the sentencing hearing, although both the Court and the government did.

It is clear that Mr. Bills himself did not believe his client was subject to more than 120 months when he filed his client's objections, and his performance during the sentencing hearing (set forth below) indicates that that he continued to believe the maximum sentence was 120 months. This in itself demonstrates attorney conduct that falls below an objective standard of reasonableness. See Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999) (attorney who does not know basic sentence for an offense is ineffective); and Riggs v. Fairman, 399 F.3d 1179 (9th Cir.

2005) (defense counsel's failure to learn client was exposed to a potential 25–year–to–life

sentence as a career offender fell below an objective standard of reasonableness).

### b.  Presentence Report, Addendum, and Recommendation

Paragraph 106 of the final Presentence Report stated as follows:

> **Statutory Provisions:**  The maximum term of imprisonment is 10 years, pursuant
> to U.S.C. § 922(g)(1) and § 924(a)(2).  The offense is a Class C felony.

PSR ¶ 106.  As noted, both sides filed objections referring to this statement of the statutory

maximum.  The government's position was that the maximum term should be 20 years, and Mr.

Bills' position was that the maximum term is 10 years.  However, the Probation Office's

response to these diametrically opposed positions, as stated in the Addendum to the Presentence

Report, did not resolve the opposing positions.

In addressing the government's objection the Probation Officer agreed with the

government, cited to the Sentencing Options section of the Presentence Report, and stated that

the penalties noted apply at each count.  Addendum 1.  However, paragraph 106 does not state

that the maximum term is 240 months, nor does it state that the maximum sentence of 120

months applies to each count.  Paragraph 106 also does not specifically identify that two counts

are at issue, and does not state that consecutive sentences are applicable in this case.  In addition,

despite the Probation Officer's concurrence with the government's position as stated in the

Addendum, the Addendum itself does not state that the maximum sentence in this case is 240

months.

More significantly, the Probation Officer twice confirmed in the Addendum that the

maximum sentence in this case is 120 months.  First, in agreeing with the government that the 1-

level decrease for timely acceptance of responsibility originally awarded to Mr. Holcomb should

be removed, and thus the advisory guideline range should be increased, the Probation Officer

clarified that despite the increase in the guideline range "it is noted that **there is a statutory maximum of 10 years (120 months) in this case**." Addendum 1 (emphasis added). Next, in addressing Defendant's objections, the Probation Officer again explicitly stated that in this case "the statute sets the maximum term of imprisonment at not more than 10 years at Counts 1 and 2, and consequently, pursuant to U.S.S.G. § 5G1.1(a), **the advisory guideline range must be 120 months**." Addendum 3 (emphasis added).

These last two statements indicating that the maximum sentence in this case was 120 months are not typographical errors but actually reflect the Probation Officer's position. The Probation Officer issued a revised sentencing recommendation the same date as the Addendum in which the Probation Officer recommended to the Court, as we told the parties at the sentencing hearing, that we impose a "sentence at the statutory maximum (in this case 120 months)." Revised Sentencing Recommendation. 2. More specifically, the Probation Officer recommended a sentence of 120 months at each count to be served concurrently. Given the circumstances prior to sentencing, it clearly would have been beneficial to have issued tentative findings and rulings, and perhaps delayed sentencing, but instead we proceeded to sentencing.

### c. The Sentencing Hearing

At sentencing, before evidence was introduced and argument heard, we stated that the "appropriate guideline range is 188 to 235 months imprisonment with a statutory minimum of 120 months imprisonment, at each of two counts." Sentencing Tr., 4/2/2009, 3 (ECF No. 77). We then asked Mr. Bills if he would like to offer argument on his motion for a downward departure based on Mr. Holcomb's criminal history category substantially over-representing the seriousness of his criminal history. Sentencing Tr. 4. Mr. Bills' response was less than impressive. The entirety of his argument in this regard was as follows:

Well, if I could put it this way, the United States Supreme Court in the Spears and Nelson cases, and I think this is where we're at in the overrepresentation, they have held, and we have the Booker and Apprendi, and then even before that we had the Kunz case which the Supreme Court had reversed because of downward departures. It certainly appears that you've gone through the analysis correctly and I would suggest to the Court that we have a young man who the guidelines are actually 15 years for a possessory count, albeit a very serious crime. I'm merely suggesting that the overrepresentation in light of what you can find for a downward departure in light of Spears and in light of Nelson, which seems to indicate to me – that's just my reading of both those cases – that the Court, although the guidelines are advisory, you have to do the analysis, that actually, it sort of opens the door. And taking into consideration his youth, the fact that he was in college, that fact that although he didn't finish, that these crimes were committed, i.e., on an off-campus residence, I understand that, I would suggest that the amount of time that we're talking about, 15 years, even 188 is an incredible amount of time in relationship to his age as to overrepresentation.

Sentencing Tr. 4-5. Significantly absent from his initial response was any mention of our statement that the Mr. Holcomb was subject to a term of imprisonment of 120 months at each of two counts.

In response to Mr. Bills' statement, the government correctly pointed out that Mr. Bills' argument, such as it was, was not an argument for a downward departure. Sentencing Tr. 6. Government counsel stated, "[a]s far as the overrepresentation issue, I think that that probably is better addressed from the standpoint of whether a variance from the guidelines is appropriate as opposed to a departure under the guidelines. . . . . I think it's more of a variance argument that is being made than really a legitimate departure argument." Sentencing Tr. 6.

Mr. Bills' argument in support of his other objections was similarly deficient and in fact sounds more like a concession that the additional levels added to the base offense level for Mr. Holcomb's possession of other firearms and drugs was appropriate. His entire argument is as follows:

If indeed we're talking about constructive possession, there were other people inside the residence and that one would have to suggest that there is a

constructive possession in the house, even though this was a type of a situation where the room seemed to be occupied by individuals and – however, it's so discretionary on the Court's part. I mean I don't know of any cases that would say that you would be seriously dead wrong if you said that it – if you found that it was constructive possession, but in the same vein, there was that separateness, and I'm suggesting that we should merely almost have like a direct correlation to the defendant. That's where I'm at.

Sentencing Tr. 5. This is hardly the model of effective advocacy.

Although it did not appear to be necessary in light of Mr. Bills' concession, the government introduced substantial evidence to show that the increases were warranted. Sentencing Tr. 7-19. Again, on cross-examination, Mr. Bills barely made an effort. *See* Sentencing Tr. 19-21.

Once the government's evidence concerning the issue of possession of the other guns and drugs was completed, we asked Mr. Bills if he had "any testimony with respect to the facts of the case?" Sentencing Tr. 21. His response appeared to indicate that he was ready for sentence to be imposed as he indicated that Mr. Holcomb wanted to make a statement: "Mr. Holcomb wishes to address the Court, and there was one young lady, Ms. Brook, as a character witness." Sentencing Tr. 21. However, we had not yet ruled on the objections or the downward departure, nor had we heard from counsel regarding the section 3553(f) factors. Mr. Bills thus clarified that he had no evidence to offer. Sentencing Tr. 22.

We then stated: "With respect to the statutory maximum term of imprisonment referred to in Paragraph 106, we haven't spoken to that yet. That is kind of a legal tangle. I'm going to discuss that in a few minutes." Sentencing Tr. at 22. Thus, at this stage in the sentencing hearing we clearly indicated that we were not certain about the status of the statutory maximum in this case. After issuing our rulings on the objections and denying the motion for downward departure we stated as follows:

> So, my finding is that we do have here an offense level of 31 and a Criminal History Category of VI. And the maximum penalty on each of those counts, the two counts in the indictment are 120 months of imprisonment on each of Counts One and Two, and the calculated guideline range is 188 to 235 months. The probation officer has recommended 120 months to be served concurrently.

Sentencing Tr. 24.

We then asked what "is the government's position on that." Sentencing Tr. 24. In response the government acknowledged that there was in fact confusion over this issue by stating "Your Honor, I don't think I explained myself real well in the pleadings that I filed." Sentencing Tr. 24. The government then stated its position, which accurately stated the law, and respectfully but not forcefully, asserted that the Court was permitted to, and should, impose consecutive sentences in order to reach a sentence within the advisory guideline range:

> If the guidelines in this court determine that the total punishment should be greater than 120 months, then this Court would be authorized to account for the total punishment by imposing consecutive sentences because the combined statutory maximum sentence that this Court could impose is 240 months. And I think that that is specifically contemplated by the guidelines because, quite frankly, Mr. Holcomb was convicted of both counts and not just one of them. So, I guess my position is that if the Court ultimately – my argument would be that the Court should do that, but I guess for now I would say that the Court is certainly allowed to do that under the guidelines, consecutive sentences.

Sentencing Tr. 25.

It is at this point in the proceedings that it should have become clear to Mr. Bills that his client faced a potential sentence greater than 120 months. The government clearly set out the issue by explaining that a consecutive sentence was permitted, and that the government was seeking a consecutive sentence as a means to arrive at a sentence within the guideline range, and that the sentence sought by the government was at least 188 months. Given the confusion over the maximum sentence that had lasted until this point in the proceedings, and given that Mr. Bills and Mr. Holcomb had believed that the maximum sentence he would receive would be 120

months, at a minimum Mr. Bills should have argued for a variance from the guideline range.

Instead, this is all he said on behalf of his client:

> I guess I'm in a precarious position.  I don't think if you did that it would be reversible, I understand the argument under the guidelines the government makes; that's not where we're at here. I mean I can't say that that's not allowable.

Sentencing Tr. 25.

We again asked Mr. Bills if had anything to say with respect to mitigation of sentence.

Sentencing Tr. 26-27.  Again, Mr. Bills failed to represent his client at all and simply referred to

Mr. Holcomb wanting to address the Court.  Sentencing Tr. 26.   After the government argued

for a sentence within the guideline range, we *again* asked Mr. Bills if he had anything further to

offer on behalf of Mr. Holcomb.  Sentencing Tr. 32.  His response was vague and general, did

not address the section 3553(f) factors as applied to Mr. Holcomb, and again was not an

argument on *behalf* of his client.  Significantly, Mr. Bills never requested a variance from the

guideline range.    His response was as follows:

> Just one thing.  It just goes to the Court's sentence.  Someone reminded me that a mind is a terrible thing to waste.  The question I guess before the Court is for how long are we going to waste that mind?  He hasn't done real well with it, but he certainly has a God-given good mind.
> I'm reminded also that I actually have been practicing law for over three decades and a decade is an awful long time for a young person.  I've always wondered whether a decade was longer for an old man or longer for a young man; never came to that conclusion.  I think that's where we're at in this case.  However, the Court, you've seen plenty of cases.

Sentencing Tr. 32.  Besides the overall deficient performance of Mr. Bills, this specific response,

with the reference to a "decade" being "an awful long time for a young man" raises the question

of whether Mr. Bills still maintained the belief that Mr. Holcomb was going to be sentenced to a

maximum of 120 months; or was aware that the sentence could be at least 188 months, but saw

no reason to argue for a lesser sentence.   Neither conclusion reflects well on Mr. Bills' performance.

### d.   Counsel's Performance was Deficient

We are mindful that we must presume that counsel performed in a professionally reasonable manner and that his "conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  "The presumption can be rebutted by showing 'that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound.'"  Lewis v. Horn, 581 F.3d 92, 113 (3d Cir. 2009), quoting Thomas v. Varner, 428 .3d 491, 499-500 (3d Cir. 2005).

Our review of the record shows that Mr. Bills did not conduct a "thorough investigation of law and facts."  Strickland, 466 U.S. at 690.  Although it does not appear that Mr. Bills actually had a strategy or made strategic choices, to the extent he did his decisions were not "informed decisions".   Strickland, 466 U.S. at 681.  The conduct of counsel could fairly be said to be "unsound" as the decisions made by Mr. Bills were not "reasonable strategic or tactical judgments" but were, as stated, a near-complete abandonment of his duty as counsel.  Loughery, 908 F.2d at 1018.

Although Mr. Holcomb was on notice that he faced a 120-month sentence at each count our review of the record establishes that there was confusion and misunderstanding concerning his potential maximum sentencing exposure.  We conclude that effective counsel in this case would have responded to the circumstances faced by Mr. Bills by developing the record, challenging the government's position, and requesting -- and arguing for -- a variance from the guidelines.  In all these aspects Mr. Bills' performance was deficient.

An attorney rendering effective assistance in this case would have, at a minimum, requested and argued for a variance from the guideline range. Effective counsel would also have pointed out that despite the fact that there was a 120-month statutory minimum on each count, it was the Probation Officer's position that an appropriate sentence in this case was 120 months. Effective assistance of counsel at sentencing in this case would have also consisted of an explicit acknowledgement that defense counsel and his client were operating under the belief that the maximum sentence he *would* receive was 120 months, even though the maximum sentence he could receive was greater. Moreover, counsel would have pointed out that it was not until just prior to imposition of sentence that it was formally determined that the maximum sentence in this case was not 120 months. Effective counsel would have argued that despite the fact that the Court was empowered to impose consecutive sentences, it was also empowered to vary from the advisory guideline range and impose a sentence below the guideline range. Mr. Bills did none of this. Accordingly, we find that Mr. Bills' performance fell below Strickland's objective standard of "reasonableness under prevailing professional norms." 466 U.S. at 688, 104 S.Ct. 2052.

## 2. Prejudice

We turn now to the question of whether this deficient performance prejudiced Mr. Holcomb. To satisfy the second prong of Strickland, the "prejudice" prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The outcome in this case is the ultimate sentence Mr. Holcomb received. "The reasonable probability of any decrease in [defendant's] sentence is sufficient to establish prejudice." Smack, 347 F.3d at 540; see also Glover, 531 U.S. at 203 ("Authority does not suggest that a

minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.") We conclude that had Mr. Holcomb received effective assistance at sentencing there is a reasonable probability that he would have received a sentence less than the advisory guideline minimum of 188 months.

Mr. Bills offered no argument on behalf of his client. As noted, what we heard was essentially a concession from Mr. Bills that whatever sentence we imposed would be upheld on appeal. Overall it appears that Mr. Bills ceased acting as an advocate for Mr. Holcomb despite the fact that we offered him numerous opportunities to present an argument on behalf of his client. It is precisely because Mr. Bills failed to present any argument or evidence at all that we are without sufficient information to say one way or the other what sentence we would have imposed had Mr. Bills asked and argued for a variance. We note that even the government indicated that Mr. Bills had the beginnings of an argument for a variance and still Mr. Bills failed to even request a sentence below the minimum advisory guideline range. Because we find that there is a reasonable probability that Mr. Holcomb would have received a decreased sentence if he had effective assistance of counsel at sentencing, prejudice as a result of Mr. Bills' ineffectiveness is established.

## IV.  **Conclusion**

As we have illustrated, there was a complete absence of advocacy on behalf of Mr. Holcomb that leads to the conclusion that there is a reasonable probability that, had he received effective assistance of counsel at his original sentencing, we would have varied from the guideline range and imposed a lesser sentence. Accordingly, Petitioner's 28 U.S.C. § 2255 motion will be granted based on Mr. Holcomb's ineffective assistance of counsel argument.

When a reasonable probability of a decrease in a defendant's sentence is found had the defendant received effective assistance of counsel at his original sentencing, the remedy is to resentence the defendant. See Smack, 347 F.3d at 540. We will set a status conference with counsel to discuss scheduling a resentencing hearing. At a later date we will issue an Order setting a resentencing hearing and vacating the original Judgment.

Finally, we note that it is precisely because Mr. Bills failed to set forth *any* arguments on behalf of his client that we are without sufficient information to state that we definitely would have imposed a lesser sentence. Thus, Mr. Holcomb and his counsel must understand that it is possible that upon resentencing we will determine that the most appropriate sentence in this case is in fact the original sentence of 188 months' imprisonment.

Date: March 6, 2014

Maurice B. Cohill, Jr.
Senior United States District Court Judge

24

## Order

AND NOW, to-wit, this __6__ day of March, 2014, it is hereby ORDERED,

ADJUDGED, and DECREED that Petitioner's Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 85) is GRANTED as to the claim that

counsel rendered ineffective assistance.

The Court will not take any further action in this matter until after the time to file an

appeal to the United States Court of Appeals for the Third Circuit has expired. Thereafter, a

status conference will be set, after which Petitioner's Judgment will be vacated and a

resentencing hearing will be scheduled in accordance with this Opinion.

Maurice B. Cohill, Jr.
Senior United States District Judge